UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHARON K. STARK, as the      :     NO. 1:11-CV-00783
Administratrix of the Estate :
of Justin K. Stark,          :
                             :
        Plaintiff,           :     **OPINION AND ORDER**
                             :
    v.                       :
                             :
NAPHCARE, INC., et al.,      :
                             :
        Defendants.          :


        This matter is before the Court on the Motion to Dismiss

of Defendants Naphcare, Inc., Jackie Schrader, Carol Hubbard, M.D.,

Gardella Campbell, Andrea Appoh, Pierrette Arthur, Leticia Smith,

Tran Hong-Ha, and Angela Moor, R.N. (doc. 7), Plaintiff's Response

in Opposition (doc. 17), and Defendants' Reply (doc. 20).  Also

before the Court is the Motion to Dismiss of Hamilton County

Defendants Robert Davis and D. Sergent (doc. 14), and Plaintiff's

Response in Opposition (doc. 19).   For the reasons indicated

herein, the Court DENIES Defendants' motions.

**I.  Background**

        Plaintiff alleges that her Son, Decedent Justin Stark,

was arrested on January 19, 2011, on an outstanding warrant for a

minor offense (doc. 1).   Decedent was initially housed at the

Talbert House detention facility, where he started running a fever,

developed a sore throat, developed diarrhea, would wake up in

puddles of sweat, and discovered multiple lumps under his chin and on his throat (Id.).   Due to his medical condition, Decedent was transferred to the Hamilton County Justice Center, where Defendant Naphcare, Inc. is responsible for the medical care of inmates (Id.).   On February 17, 2011, Decedent placed a sick call slip wherein he stated "Head and body is really hot.  Head is throbbing. Getting light headed" (Id.).

Defendant Leticia Smith, a Naphcare employee, responded to Decedent's sick call slip, but Plaintiff alleges that she failed to take Decedents' vitals or provide "emergent care" (Id.).   In response to the slip, Plaintiff alleges Defendant Dr. Carol Hubbard, without physically examining the Decedent, verbally ordered Tylenol (Id.).

The next morning, Plaintiff alleges Defendants Robert Davis and Sgt. D. Sergent disciplined Decedent for failing to get out of bed (Id.).  Plaintiff alleges Defendants Davis and Sergent provided no medical attention or referral at such time (Id.).

On February 20, 2011, Decedent placed a second sick call slip, in which he stated "Severely sick.  Whole body is constantly burning up.  My head is constantly throbbing.  Haven't been able to sleep for (5) days because I'm up all night burning up.  Then when I do get some sleep I wake up in a puddle of sweat.  Throat is really sore also.  I need immediate attention from someone; I need to go to medical or something quick" (Id.).   Naphcare employee

2

Defendant Pierrette Arthur responded to such call slip (Id.). Plaintiff alleges Arthur failed to take Decedent's vitals and failed to provide him with emergent care (Id.). Defendant Dr. Carol Hubbard, Plaintiff alleges, did not physically examine Decedent, but verbally ordered cough medication and an antihistimine (Id.).

Plaintiff alleges on February 21, 2011, Decedent informed Naphcare employee Defendant Andrea Appoh that he felt a lump in his throat, and he requested access to a doctor (Id.). Plaintiff alleges Appoh neither provided access to a doctor nor provided emergent care (Id.). However, Plaintiff alleges that Defendant Angela Moore, R.N., examined Decedent that evening and her notes indicate that Decedent complained of "a sore throat, lumps in his throat, swollen lymph nodes and had a 103.2 fever" (Id.). Plaintiff further alleges that Defendant Dr. Hubbard ordered Tylenol and Motrin for Decedent, in response to his complaints and upon assessment of his condition (Id.).

The next day, Plaintiff alleges that Naphcare employee Defendant Gardella Campbell sent out throat cultures obtained from Decedent (Id.). The results ultimately confirmed that Decedent had mononucleosis (Id.). Dr. Hubbard suspected Decedent had mononucleosis, and ordered that Decedent receive "support care" (Id.). Plaintiff alleges that there is no evidence that such order was ever followed (Id.). Plaintiff alleges that despite Dr. Hubbard's order that Decedent's vital signs be taken daily, there

3

is only documentation that this order was followed two times (Id.).
In fact, Plaintiff alleges there is no documentation that Plaintiff
received any further medical treatment for the next three days
(Id.).

Plaintiff alleges that on February 26, 2011, Naphcare
employee Jackie Schrader noted that Decedent complained that he
could not keep food down (Id.). Schrader further noted that
Plaintiff had an elevated heart rate, but failed to provide
emergent care (Id.). Plaintiff alleges that next, Dr. Hubbard,
without examining Decedent, gave the verbal order that Decedent
receive a nutritional drink, ice, and juice, three times a day
(Id.). Plaintiff alleges that other than that day, there is no
evidence that such order was followed, and no evidence that any
medical treatment at all was provided on the following day (Id.).

Plaintiff alleges that on February 28, 2011, Naphcare
employee Tran Leah Hong-Ha noted that Plaintiff was complaining
that he had developed lumps in his armpits (Id.). Defendant Hong-
Ha confirmed as much, and noted Decedent had an elevated heart rate
(Id.). A short time later, Hong-Ha noted that Decedent was
vomiting up his medications and requesting Gatorade (Id.).
Plaintiff alleges that Hong-Ha failed to provide emergent care, and
that there is no indication Decedent received any medical treatment
on the following day (Id.).

On March 1, 2011, Decedent appeared in court on his
probation violation (Id.). The judge recognized Decedent was ill,

4

and released him on his own recognizance to go to the hospital (<u>Id</u>.).  Decedent went immediately to the emergency room at St. Elizabeth's hospital (<u>Id</u>.).  At the hospital, Decedent was diagnosed, along with mononucleosis, with gastroenteritis (severe inflammation of the gastrointestinal tract resulting in acute vomiting and diarrhea), lymphadenopathy (enlarged lymph nodes) and hyponatremia (electrolyte imbalance where the concentration of sodium is lower than normal, usually caused by prolonged vomiting and diarrhea)(<u>Id</u>.).  Decedent's condition deteriorated over the following weeks and by March 26, 2011, he had to be placed on a respirator (<u>Id</u>.).  On April 14, 2011, he died of multi-organ failure (<u>Id</u>.).

Plaintiff brings a four-Count Complaint, alleging that 1) Defendants violated Decedent's right to due process and to be free of cruel and unusual punishment, 2) Defendants were deliberately indifferent to Decedent's serious medical needs, 3) that Defendants were negligent, and 4) that Defendants breached statutory duties and administrative code provisions relating to the operation of a jail (<u>Id</u>.).  Naphcare, Inc., and its employees that are named as Defendants (collectively, the "Naphcare Defendants"), and Deputy Robert Davis and Sergeant D. Sergent (the "County Defendants") have filed motions to dismiss claiming Plaintiff fails to state a claim upon which relief may be granted (docs. 7, 14).  Plaintiff has responded (doc. 17), such that this matter is ripe for the Court's consideration.

## II.  Applicable Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether a cognizable claim has been pled in the complaint.  The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976); Erickson v. Pardus, 551 U.S. 89 (2007).  In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 629-30 (6th Cir. 2009), quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

A motion to dismiss is therefore a vehicle to screen out those cases that are impossible as well as those that are implausible.  Courie, 577 F.3d at 629-30, citing Robert G. Bone, Twombly, Pleading Rules, and the Regulation of Court Access, 94 IOWA L. REV. 873, 887-90 (2009).  A claim is facially plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Iqbal, 129 S.Ct. at 1949.  Plausibility falls somewhere

between probability and possibility.  Id., citing Twombly, 550 U.S. at 557.  As the Supreme Court explained,

> "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1950.

The admonishment to construe the plaintiff's claim liberally when evaluating a motion to dismiss does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions.  Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969).  "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981); Wright, Miller & Cooper, Federal Practice and Procedure, § 1216 at 121-23 (1969).  The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading.  A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim.  But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that

7

those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

**III.  Discussion**

**A.  Plaintiff's Federal Law Claims Against The Naphcare Defendants**

The Naphcare Defendants argue first that Plaintiff's Section 1983 and deliberate indifference claims should be dismissed because they are not federal actors and in their view, they cannot be held liable under such theories (doc. 7, citing Public Utilities Comm'n v. Pollack, 343 U.S. 451, 461 (1952), Blevens v. County of Franklin, 2011 U.S. Dist. LEXIS 35748 (S.D. Ohio Mar. 16, 2011)). They further argue that because Decedent was a pre-trial detainee he cannot invoke the protections of the Eighth Amendment or against deliberate indifference (Id. citing City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983), Watkins v. City of Battle Creek, 273 F.3d 682, 685-86 (6th Cir. 2001)).

Plaintiff correctly responds that Defendants' attack on her deliberate indifference claim is incorrect (doc. 17). Defendants' citation to Pollack fails to note footnote eight of such decision, where the high court noted that "[w]hen authority derives in part from Government's thumb on the scales, the exercise by private persons becomes closely akin, in some respects, to its exercise by Government itself." Public Utilities Comm'n v. Pollack, 343 U.S. 451, 462 fn. 8 (1952).  Plaintiff correctly contends that under West v. Atkins, 487 U.S. 42, 54 (1988), the

8

medical treatment of inmates by prison physicians is state action, which is subject to suit under Section 1983 (doc. 17).  There is absolutely no question that pretrial detainees, like the Decedent in this matter, are entitled to protection against deliberate indifference to serious medical needs.  Blackmore v. Kalamazoo County, 390 F.3d 890, 895 (6th Cir. 2004)(citing Bell v. Wolfish, 441 U.S. 520, 545 (1979)).

　　　　As a technical matter, the Naphcare Defendants are correct that it is the due process clause rather than the Eighth Amendment that protects the rights of a pretrial detainee. However, the Complaint in this matter does invoke the Fourteenth Amendment, and the Supreme Court has made it clear that pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners.  Bell, 441 U.S. 520, 545.  The due process rights of pretrial detainees are at least as great as those Eighth Amendment rights available to convicted prisoners.  City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983), Gray v. City of Detroit, 399 F.3d 612, 616 (6th Cir. 2005).  Under these circumstances, the Court finds Plaintiff has adequately stated a claim for deliberate indifference to serious medical needs by the Naphcare Defendants, who were acting on behalf of the state by contracting to provide medical care at the Hamilton County Justice Center.

　　　　The Naphcare Defendants next contend that Plaintiff's deliberate indifference claim fails on the merits, for lack of

sufficient allegations to establish a plausible claim (doc. 7).
Defendants contend that where a prisoner has received some medical
attention and the dispute is over the adequacy of the treatment,
federal courts are generally reluctant to second guess medical
judgments and constitutionalize claims that sound in state tort law
(Id., citing Graham ex rel. Estate of Graham v. County of
Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004)).  Instead, contend
Defendants, "[a] prison official cannot be found liable. . .for
denying an inmate human conditions of confinement unless the
official knows of and disregards an excessive risk to inmate health
or safety; the official must both be aware of facts from which the
inference could be drawn that a substantial risk of serious harm
exists, and he must also draw that inference" (Id. quoting Farmer
v. Brennan, 511 U.S. 825, 837 (1994)).  The Naphcare Defendants
then parse through individual Defendant by individual Defendant so
as to demonstrate each Defendant's responses to Decedent.

        Plaintiff responds that Defendants must have been aware
of facts from which a person in his or her position could have
drawn an inference that a substantial risk of serious harm existed
to Decedent (doc. 17).  Although Decedent was only in the custody
of Defendants for thirteen days, Plaintiff contends Decedent
certainly exhibited life-threatening symptoms of a serious medical
problem (Id.).  Plaintiff contends she alleges Decedent repeatedly
requested that he be treated and taken to the hospital; Decedent
suffered extreme fever, swollen throat, vomiting, and diarrhea

(<u>Id</u>.). In Plaintiff's view, Decedent was exhibiting classic and recognizable signs of an obviously serious medical problem (<u>Id</u>.). Plaintiff contends every Defendant had access to Plaintiff's records as well as to Decedent, and that each Defendant therefore was or should have been aware of facts from which a person in a similar position could have drawn an inference that substantial risk of serious harm existed (<u>Id</u>.). Moreover, taking the facts in a light most favorable to Plaintiff, Plaintiff contends the fact that Plaintiff was transferred from the Talbert House to the Justice Center, for treatment, strongly suggests that Defendants drew the inference that the symptoms Decedent was exhibiting posed a substantial risk of causing serious harm (<u>Id</u>.).

Plaintiff challenges Defendants' assertion that her Complaint simply alleges unsupported claims of inadequate care (<u>Id</u>.). Instead, Plaintiff contends, she has alleged Defendants were well aware of Decedent's steadily deteriorating medical condition (<u>Id</u>.). Plaintiff contends she alleges Decedent continued to develop swollen lymph nodes all over his body, which should have been an indicator that something was seriously wrong (<u>Id</u>.). Plaintiff further argues the simple fact that Decedent died of multiple organ failure as a result of something as common and treatable as mononucleosis, is in and of itself, sufficient to suggest there was grossly inadequate care administered (<u>Id</u>.).

Plaintiff further contends, relying on <u>Preyor v. City of Ferndale</u>, 248 Fed. Appx. 636, 644 (6th Cir. 2007), that even when

a person in custody is given aspirin and an enema, a jury could find deliberate indifference despite the fact the patient was not simply ignored (doc. 17). Plaintiff contends her case is like that of <u>Preyor</u>, as Decedent was only provided with over the counter remedies to treat the symptoms of his illness, while the cause of his illness was decidedly ignored (<u>Id</u>.). Although Defendants ordered tests, Plaintiff alleges they failed to follow up on such tests and simply continued to treat Decedent with Tylenol and Motrin (<u>Id</u>.).

Plaintiff next argues that Decedent's condition was objectively sufficiently serious due to its obviousness to laypeople (<u>Id</u>. <u>citing</u> <u>Blackmore</u>, 390 F.3d at 896-98.) The facts as alleged, Plaintiff contends, show that the staff at Talbert House thought Decedent should be transferred due to the seriousness of his condition, and that when Judge Winkler saw his condition, he immediately released Decedent to go to the hospital (<u>Id</u>.).

Plaintiff concedes Defendants provided some medical attention to Decedent (<u>Id</u>.). However, Plaintiff argues each Defendant failed, as they should have, to provide adequate care (<u>Id</u>.).

As for Defendant Naphcare, Plaintiff argues its medical records show that it was aware of Decedent's condition, and that though it is realistic to try to treat an illness at its beginning stages with over-the-counter remedies, over twelve days Decedent's condition deteriorated without additional treatment (<u>Id</u>.). In

12

Plaintiff's view, then a professional medical care provider like Naphcare, and its paid medical staff, should have been aware of the substantial harm likely to occur (Id.). Moreover, Plaintiff contends that discovery may yield a protocol or policy as to how a situation like Decedent's situation should have been handled, it is just as likely that Defendant Naphcare failed to establish such a protocol (Id.). Plaintiff argues Naphcare's potential failure to establish a more responsive policy could be viewed by a jury to have caused constitutional harm to Decedent (Id.).

As for Defendant Dr. Hubbard, Plaintiff contends the doctor had a duty to provide more than some treatment, but to provide treatment without exposing the Decedent to excessive risk of serious harm (Id. citing Phillips v. Roane County Tenn., 534 F.3d 531, 544 (6th Cir. 2008)). Here, Plaintiff contends, taking her allegations in a light most favorable to Plaintiff, the facts show Dr. Hubbard was made aware of Decedent's illness on February 17, but waited until February 22 to actually give Decedent a physical examination (Id.). Plaintiff's Complaint further alleges that Dr. Hubbard prescribed over-the-counter medications, and failed to re-evaluate the treatment when it became obvious Decedent's condition was not resolving (Id.). Finally, Plaintiff alleges that although Dr. Hubbard ordered a mononucleosis test and a throat culture, she failed to follow up on the status or outcome of the throat culture, and Decedent ultimately died of mononucleosis, which was "left untreated" (Id.).

13

As for Defendants Arthur, Appoh, Campbell, Schrader, and Hong-Ha, Plaintiff contends each one knew Decedent was sick, and was aware of complaints of progressive symptoms (Id.).  Although Plaintiff appears to concede even if such Defendants' interaction was minimal, Plaintiff contends there can be no dispute that each one had the opportunity to see and somehow contribute to the treatment/non-treatment of Decedent (Id.).  Finally, Plaintiff contends there must have been a protocol to follow with respect to serious medical needs, and either Defendants failed to follow it, or the protocol itself was inadequate (Id.).

Having reviewed this matter, the Court finds that Plaintiff has adequately alleged her federal claims against the Naphcare Defendants for deliberate indifference to serious medical needs and for violation of Decedent's right to due process. Plaintiff brings adequate allegations to support the theory that Defendants knew or should have known of the substantial danger facing Decedent, that over a period of nearly two weeks they merely dispensed over-the-counter drugs, and that it was clear to non-medical observers, including a judge, that Decedent required serious medical intervention.  Plaintiff similarly adequately alleges that an inadequate policy or a policy that Defendant Naphcare failed to implement, amounted to a custom or procedure that led to the violation of Decedent's rights. Monell v. New York City Dept. Social Svs., 436 U.S. 658 (1978).  Plaintiff's claims against the Naphcare Defendants are therefore plausible, and the

14

Court rejects Defendants' motion to dismiss.  In so doing, the Court notes that some of the individual Defendants, notably Defendant Campbell who is alleged to have ordered tests, may ultimately be dismissed from this case after further factual discovery.  However, at this juncture, the Court finds plausible the allegation that Naphcare and its staff should have been aware of the substantial harm facing the Decedent, and therefore will not dismiss the Complaint against them.

**B.  Plaintiff's State Law Claims Against the Naphcare Defendants**

The remainder of the arguments in relation to the Naphcare Defendants pertain to Plaintiff's claims under Ohio law for negligence and for violations of the Ohio Administrative Code. Defendants first contend the Court should dismiss such supplemental claims for Plaintiff's failure to attach an affidavit of merit to her Complaint.  Defendants contend next that a number of the OAC claims are based on inapplicable or even currently non-existent provisions.

Plaintiff responds that there is no record that Decedent was screened in compliance with OAC 5120:1-8-09(C), or that he received emergency health care in compliance with OAC 5120:1-8-09(E) (doc. 17).  Plaintiff contends the fact the records show Decedent did not receive ordered treatments or that staff failed to comply with treatment orders shows an adequate violation of OAC 5120: 1-8-09(G), which requires that medical care be performed by qualified personnel pursuant to written protocol or order of the

15

jail physician (Id.).  Plaintiff argues she, Decedent, and Decedent's father repeatedly asked for the Decedent to receive treatment by an outside physician in accordance with OAC 5120: 1-8-09(J) (Id.).  Finally, Plaintiff argues the scant medical records in relation to her Decedent Son, and the delays in medical care for her Son constitute violations of OAC 5120: 1-8-09(K) and (M), which require health records and mandate that no prisoner shall be denied health care (Id.).

Having reviewed the state-claim portion of Plaintiff's allegations against Defendant, the Court finds the bulk of Plaintiff's claims should survive Defendant's motion.  The Court notes that since the time of the filing of Defendants' motion, Plaintiff remedied that lack of an affidavit of merit in the record, by filing such affidavit on May 24, 2012 (doc. 21).  The Court therefore finds moot Defendants' arguments based on the lack of such affidavit.  However, Plaintiff failed to address Defendants' arguments regarding OAC 5120:1-8-19, which currently does not exist under Ohio law, or Ohio Revised Code 5120.01, which sets forth the duties of the non-Defendant director of the Ohio Department of Rehabilitation and Corrections.  The Court finds Defendants' motion well-taken as to such claims.  However, for substantially similar reasons as articulated in its review of Plaintiff's federal claims, the balance of Plaintiff's claims for negligence and violation of the OAC are plausible and should be subject to further discovery.  The Court therefore rejects

16

Defendants' motion to dismiss such claims.

**C.  Plaintiff's Claims Against the County Defendants**

The County Defendants, Deputy Robert Davis and Sergeant D. Sergent, move to dismiss Plaintiff's claims against them, arguing the only allegation against them is that they "disciplined Justin Stark for not getting out of bed" (doc. 14).  The County Defendants argue such allegation does not state a claim for a constitutional violation or other state tort claim (Id.). Moreover, the County Defendants claim they are entitled to qualified immunity, as there is no conduct alleged that would amount to a constitutional violation (Id.).  Finally the County Defendants invoke state law immunity pursuant to Ohio Revised Code 2744, as they could only be held liable if the facts alleged show malicious or callous conduct (Id.).

Plaintiff responds that Defendants are not entitled to qualified immunity as in order to qualify for such immunity they must show their conduct did not violate constitutional rights of which a reasonable person would have known (doc. 19, citing Pearson v. Callahan, 555 U.S. 223 (2009)).  Here, Plaintiff argues, there is no question the Defendants were acting under color of state law, and that they made contact with Decedent on February 18, 2011, when she alleges Decedent could not get out of bed.  In Plaintiff's view, because Defendants saw Plaintiff's condition, but failed to issue a referral to medical, or provide any sort of medical response, they violated Decedent's clearly established

17

constitutional rights to due process and adequate health care for a serious condition while in state custody (Id.).

Plaintiff further contends the County Defendants are liable for the state law negligence claim because state law statutory immunity is inapplicable due to the state's waiver of immunity under Ohio Revised Code 2743.02(A)(3)(b) (Id.). Under such section, the state waives immunity when 1) it assumes an affirmative duty to act on behalf of the party allegedly injured, 2) the state's agents had knowledge that inaction of the state could lead to harm, 3) there was direct contact between the state's agents and the injured party, and 4) the injured party justifiably relied on the state's affirmative undertaking. Here, Plaintiff argues, the County owed Decedent an affirmative duty to provide medical care while he was in its custody. Further, Plaintiff contends, the fact that Decedent was transferred for medical care, and that when the County Defendants encountered him he could not get out of bed, shows they had knowledge of risk of harm and direct contact. Decedent's statement on February 20 that he had not been able to sleep for five days as he had been profusely sweating and running a high fever indicates that when Defendant Davis encountered him on February 18, Decedent was exhibiting severe and obvious symptoms. Finally, because Decedent was in custody and unable to take affirmative action on his own behalf, Plaintiff contends he justifiably relied on the County to perform its duty to attend to his medical needs.

Having reviewed this matter, the Court finds the County Defendants' position persuasive. There is no allegation that either County Defendant knew about Decedent's condition, beyond the speculation that when he would not get out of bed, they should have ascertained it. The Incident Report attached to Plaintiff's motion shows three important facts. First, Defendant Davis encountered five inmates on February 18, 2011 who did not get out of bed as ordered that morning and who were disciplined. Such fact shows that a reaonable officer confronted with inmates who did not want to get up at 5:00 A.M. would not necessarily see anything out of the ordinary in relation to Decedent. Second, the report shows Davis then notified his supervisor, Defendant Sergent, about the five inmates. There is no indication that Sergent had any contact at all with Decedent. Third, the report in no way, and Plaintiff's allegations in no way, show how either of the County Defendants had knowledge of Decedent's transfer from Talbert House, or of his medical issues.

Under these circumstances, where the only allegation is premised on discipline levied by a guard, the Court finds such guard and his supervisor entitled to qualified immunity. For essentially the same reasons the Court finds the County Defendants entitled to statutory immunity. There is no allegation Davis or Sergent had knowledge about Decedent's health condition, beyond the theory they should have seen it as obvious. Indeed, there is no indication Sergent had any contact at all with Decedent. As

19

such, the Court finds the County Defendants qualified to immunity from this lawsuit and finds it appropriate to GRANT their motion.

## IV. Conclusion

For the reasons indicated herein, the Court finds Plaintiff has pled plausible claims against the Naphcare Defendants for violation of his constitutional and state law rights. Accordingly, the Court DENIES IN PART the Naphcare Defendants' Motion to Dismiss (doc. 7), while consistent with this decision GRANTS IN PART such motion as to Plaintiff's claims pursuant to OAC 5120:1-8-19, which currently does not exist under Ohio law, and Ohio Revised Code 5120.01, which sets forth the duties of the non-Defendant director of the Ohio Department of Rehabilitation and Corrections. The Court further GRANTS the Motion to Dismiss of Hamilton County Defendants Robert Davis and D. Sergent (doc. 14), the "County Defendants," as such Defendants are entitled to qualified and statutory immunity.


SO ORDERED.


Dated: September 13, 2012        s/S. Arthur Spiegel
                                 S. Arthur Spiegel
                                 United States Senior District Judge